IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| *In re* SUBPOENA of EMPLOYMENT BACKGROUND INVESTIGATIONS, INC. | |
| MARSHALL MYRICK, on behalf of himself and on behalf of all others similarly situated,<br>    *Plaintiff*,<br>v.<br>THE MIDDLESEX CORP.<br>    *Defendant*. | Civil Action No. ELH-17-1850<br><br>(Related Case: *8:17-cv-261-JDW-MAP in the U.S. District Court for the Middle District of Florida*) |

**MEMORANDUM**

This Memorandum resolves the Motion to Quash (ECF 1) filed by Employment Background Investigations, Inc. ("EBI") pursuant to Fed. R. Civ. P. 45. It concerns two subpoenas served on EBI by the plaintiff in the class action lawsuit captioned *Myrick v. The Middlesex Corporation*, Case No. 8:17-cv-261-JDW-MAP, pending in the Middle District of Florida ("Florida Case" or "Fla. Case").[1] The motion is supported by a memorandum of law (ECF 1-1) (collectively, "Motion"), and several exhibits. *See* ECF 1-2 through ECF 1-5.

EBI is not a party to the Florida case. The Motion was filed in the District of Maryland because compliance with the subpoenas is required in this District. *See* Fed. R. Civ. P. 45(d)(3)(A).

Although the Motion reflects service on counsel for the parties in the Florida Case (ECF 1 at 3), no party has responded to the Motion. *See* docket. A hearing is not necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

---

[1] To my knowledge, no class has yet been certified. *See* Fla. Case, Docket.

# I. Factual and Procedural Background

Marshall Myrick initiated the Florida Case on February 1, 2017, alleging that The Middlesex Corporation ("Middlesex") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq. See* ECF 1-4 (Complaint in Fla. Case). In particular, Myrick alleges that, through an outside consumer reporting firm, Middlesex conducts background checks on "the majority of its prospective employees" and on "current employees from time to time." *Id.* ¶¶ 16-17. But, he complains that Middlesex "does not provide prospective or current employees with a copy of their consumer reports before taking adverse action against them based on the information in such reports." *Id.* ¶ 25.

Plaintiff asserts, *id.* at 27:

By failing to provide Plaintiff and other Putative Class members with copies of their consumer reports prior to taking adverse employment action against them based on the information contained in such reports, Defendant willfully disregarded . . . unambiguous regulatory guidance as well as the plain language of the statute, in violation of 15 U.S.C. § 1681 b(b)(2)(A).

According to plaintiff, he applied for a job as a construction worker with Middlesex in September 2016. *Id.* ¶ 28. He received an offer of employment, subject to a background check. *Id.* ¶ 30. Middlesex then procured a consumer report on plaintiff, conducted by EBI. *Id.* ¶ 31; *see* ECF 1-1 at 3. Thereafter, on November 28, 2016, plaintiff was terminated. *Id.* ¶ 32. Plaintiff maintains that he was terminated as a result of the content of his consumer report. *Id.* ¶ 33. However, he alleges that he was given "no pre-adverse notice whatsoever of the information contained in the consumer report . . . ." *Id.*

Middlesex answered the Complaint on March 17, 2017. Fla. Case, ECF 7. Judge James Whittemore, to whom the case is assigned, issued a Scheduling Order on May 2, 2017. Fla.

Case, ECF 14. Among other things, the Scheduling Order sets March 15, 2018, as the deadline for the completion of discovery and provides that trial will begin on August 6, 2018. *Id.*

On June 19, 2017, plaintiff issued a subpoena to EBI, commanding a corporate representative to appear at a deposition in Baltimore on July 14, 2017, pursuant to Fed. R. Civ. P. 45 and Fed. R. Civ. P. 30(b)(6). ECF 1-2 ("Deposition Subpoena"). The Deposition Subpoena provided that the corporate representative must have knowledge sufficient to testify as to 39 topics, including, *id.*:

> 7. Since February 1, 2015, EBI's policies, practices, and procedures – including the governing contracts, agreements, or statements of work – for furnishing employment purposed consumer reports to Lowe's [sic] and any of its subsidiaries.
>
> 8. The general substance, detail, and archive data available to you regarding the content, substance, dates, and nature of consumer reports you furnished for employment purposes since February 1, 2015.

\* \* \*

> 11. EBI's policies, practices, and procedures regarding compliance with the FCRA, including but not limited to 15 U.S.C. § 1681b(b)-"Conditions for furnishing and using consumer reports for employment purposes," that EBI shared with or provided to the Defendant in this lawsuit. By definition this includes both online forms, and forms given to applicants in person.

\* \* \*

> 14. All agreements and contracts between EBI and Defendant.
>
> 15. Any investigations into EBI in any state or federal agency for violations of the FCRA.

\* \* \*

> 18. Since April 8, 2011, the materials- including training manuals, PowerPoint presentations, live training, and webinars – you made available to your employees pertaining to compliance with Sections 1681e(b), 1681k, and 1681i of the FCRA.

* * *

21. Since February 1, 2015, the complete rules, policies, and procedures for performing adjudication or grading of reports you created for applicants or employees of Defendant.

* * *

25. The number of consumers about whom you furnished to Defendant an employment purposed consumer report containing a criminal arrest or conviction record for each year from February 1, 2015 through the present.

* * *

30. Defendant's certification to Sterling [sic] that before obtaining Plaintiff's consumer report it complied with each of the requirements of 15 U.S.C. § 1681b(b)(l)(A). To the extent an individual certification was provided to the CRA as to Plaintiff please produce it; to the extent The Middlesex Corporation and/or EBI instead relied upon a blanket certification for all putative class members to comply with 15 U.S.C. *§* 1681b(b)(l)(A) to procure consumer reports, please describe it.

31. EBI's process for matching pubic-record information to particular consumers for the purposes of including that information in employment purposed consumer reports.

* * *

34. The complete process you use to update criminal record data housed in your National Criminal File Database.

* * *

36. All databases or other computer archives containing criminal records and/or data regarding consumers, including name, hardware, software, format, fields, tables, and ability to search.

* * *

38. All communications with any insurance carrier about this case.

Notably, plaintiff sought information related to "Lowe's" and "Sterling", neither of which, to my knowledge, has any connection to this litigation. *See* ECF 1-2, ¶¶ 7, 30. According to EBI, "Lowe's and Sterling have been targeted in other FCRA lawsuits, but neither company has any relationship to the underlying lawsuit." ECF 1-1 at 4 n. 5.

In addition, on June 23, 2017, counsel for plaintiff issued a subpoena to EBI for the production of documents, information, or objects by July 10, 2017. ECF 1-3 ("Document Subpoena"). The Document Subpoena sought 31 items, including, *id.*:

2. All documents that summarize, describe, or refer to EBI's policies, practices, and procedures regarding compliance with the Fair Credit Reporting Act ("FCRA"), including but not limited to 15 U.S.C. § 1681b(b)-"Conditions for furnishing and using consumer reports for employment purposes."

\* \* \*

7. All documents that describe or refer to EBI's policies, practices, and procedures for providing consumer reports to Defendant's employment applicants or employees applying for promotion prior to taking adverse action.

\* \* \*

10. All documents that relate to ay [sic] investigations into EBI in any state or federal agency for violations of the FCRA.

\* \* \*

12. The business relationship between Defendant and EBI, including any entities that EBI purchased, acquired, subsumed, or merged with that had a business relationship with Defendants.

\* \* \*

17. The full substance, detail and archive date [sic] available to you regarding the content, substance, dates, and nature of consumer reports you furnished for employment purposes since February 1, 2015.

\* \* \*

20. The number of consumers about whom you furnished to Defendants an employment-purposed consumer report containing a criminal or traffic arrest or conviction record for each month from February 1, 2015 through the present.

* * *

22. For each month since February 1, 2015, all evidence you possess regarding the amount of time that lapses between the moment an employment-purposes consumer report containing database public record information is adjudicated as ineligible for hire by you and the moment a pre-adverse action letter is physically deposited with the United States Postal Service, on behalf of the Defendants.

* * *

28. A list of the other customers to whom EBI sells consumer reports to.

* * *

30. Your systems' electronic connection to or interaction with Defendants' hiring system.

According to EBI, Myrick did not consult with EBI prior to serving the subpoenas. ECF 1-1 at 2 n. 3. EBI states that it "reached out to Myrick's counsel on both June 29 and 30, 2017, in a good faith effort to confer before filing this Motion to Quash, but the parties were unable to reach an agreement." *Id.*

## II. Discussion

EBI claims that the information sought in the subpoenas is both overly broad and unduly burdensome for EBI to produce. *See* ECF 1-1. Fed. R. Civ. P. 45(d)(3) is titled "Quashing or Modifying a Subpoena." It states, in pertinent part: "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . (iv) subjects a person to

undue burden."[2] In *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 439 (D. Md. 2012), Judge Chasanow explained, *id.*:

> "Whether a subpoena subjects a witness to undue burden within the meaning of Rule 45[(d)](3)(A)(iv) usually raises a question of the reasonableness of the subpoena," an analysis that requires "weighing a subpoena's benefits and burdens" and "consider[ing] whether the information is necessary and whether it is available from any other source." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2008). This inquiry is "highly case specific" and involves "an exercise of judicial discretion." *Id.* "The burden of proving that a subpoena is oppressive is on the party moving to quash." *Fleet Bus. Credit, LLC v. Solarcom, LLC*, No. Civ. AMD 05–901, 2005 WL 1025799, at *1 (D. Md. May 2, 2005) (internal quotation marks omitted).

Notably, "the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Phillips v. Ottey*, No. DKC 14-0980, 2016 WL 6582647, at *2 (D. Md. Nov. 7, 2016) (quoting *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240–41 (E.D. Va. 2012)) (internal quotation marks omitted); *accord EEOC v. Performance Food Grp., Inc.*, MJG-13-1712, 2017 WL 2461977, at *2 (D. Md. June 7, 2017). Under Rule 26(b)(1), a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Subpoenas that are overbroad and that seek information "'irrelevant to the case' should be considered unduly burdensome." *Bierman Family Farm, LLC v. United Farm Family Ins. Co.*, ADC-17-0004, 2017 WL 3311206, at *3 (D. Md. Aug. 2, 2017) (citation omitted).

---

[2] In 2013, the provisions in Fed. R. Civ. P. 45(c) were recodified from subdivision (c) to subdivision (d). *See* Fed. R. Civ. P. 45 Advisory Committee's note to the 2013 amendments.

In the Motion, EBI claims that the subpoenas should be quashed because Myrick seeks "wholly irrelevant documents and testimony from EBI and would impose an undue burden on the company.[]"  ECF 1-1 at 1.  EBI notes that it is not a party in the underlying lawsuit and "had only minimal involvement in the events alleged in the Complaint."  *Id.* at 2.  Moreover, EBI points out that many of the requests in the subpoenas lack "any nexus" to Myrick's claims.  *Id.* at 5.  EBI argues that it should "not be forced to throw open its doors to Myrick and provide every detail about its operations."  *Id.*.

Further, EBI argues, ECF 1-1 at 4 n. 5, that the Deposition Subpoena (ECF 1-2) is "sloppily drafted", referring to consumer reports furnished to "Lowe's" and certifications providing to "Sterling."  *Id.* ¶¶ 7, 30.  Those entities have no apparent connection to the Florida Case.

In support of its position, EBI has provided the Declaration of Curt Schwall, who is EBI's Vice Present of Compliance and Regulatory Affairs.  ECF 1-5 (Schwall Declaration), ¶ 2.  Schwall asserts that "EBI does not send pre-adverse action or adverse action notices for The Middlesex Corporation."  *Id.* ¶ 5.  Further, he avers that EBI "furnishes thousands of consumer reports each year for its various customers."  *Id.* ¶ 6.

With respect to the burden of complying with the subpoenas, Schwall claims: "I have spoken with other EBI employees, and we estimate that it would take weeks to search for and compile the information requested . . . ."  *Id.* ¶ 7.  In particular, he claims that "to comply with request number 20 in the Document Subpoena, which asks for information about the specific types of records contained in certain consumer reports, EBI would need to run and analyze a series of systemic reports, which . . . would take a full week of work."  *Id.* ¶ 8.  Schwall estimates

that compliance with the subpoenas would require a total of 500 personnel hours, costing the company more than $50,000. *Id.* ¶ 10.

As noted, Myrick did not respond to the Motion. Because Myrick did not respond to the Motion, the Court is not in a position to assess accurately the degree to which such broad discovery as to EBI would be useful or beneficial to plaintiff. In my view, however, the burdens of the subpoena are quite substantial, and in many instances, the requested information appears marginally beneficial, at best.

As indicated, the litigation concerns whether Middlesex provided appropriate pre-adverse action notices to plaintiff and those similarly situated to plaintiff, pursuant to 15 U.S.C. § 1681b(b)(3)(A). *See, e.g.*, ECF 1, ¶¶ 47-51. Given that EBI is not a party to the litigation, it seems that much of the information and documents sought by Myrick are of questionable relevance to the case. Much of the information requested by Myrick appears to target EBI's broader business practices and its dealings beyond those related to Middlesex.

For example, as indicated, Myrick requests "[t]he general substance, detail, and archive data available . . . regarding the content, substance, dates, and nature of consumer reports . . . furnished for employment purposes since February 1, 2015." ECF 1-2 at 4, ¶ 6. There is no apparent reason why EBI should be required to produce every consumer report that it has created over the past two and half years, including reports generated for clients other than Middlesex. In addition, I see little merit to Myrick's requests for information concerning EBI's violations of the FCRA, other than information concerning EBI's role in providing post-adverse action notices, if any. Likewise, Myrick's requests for information and documents concerning EBI's efforts to comply with provisions of the FCRA that are not at issue in the underlying litigation appear to be beyond the scope of what is relevant. Compliance with these requests would

require considerable effort and expense by EBI, disproportionate to any benefit. *See* ECF 1-5, ¶¶ 8-10.

EBI's assertion that Myrick's subpoenas are tantamount to a "fishing expedition" (ECF 1-1 at 4) is an apt characterization. Myrick's subpoenas would impose an undue burden on EBI, without substantial benefits for the litigation.

To be sure, Rule 45(d)(3)(A) permits a court to modify a subpoena rather than quash it. But, I shall decline to do so. Myrick is in the best position to justify the purpose of each of his requests in the subpoenas. But, he has opted not to do so by failing to respond to the Motion. Therefore, I shall grant the motion to quash, without prejudice to Myrick's right to reformulate his subpoenas.

### III. Conclusion

In view of the foregoing, I shall grant the Motion to quash the subpoenas, without prejudice to Myrick's right to issue new subpoenas, consistent with the applicable rules and any orders of the court in the underlying case. Of course, the parties are urged to confer prior to the issuance of further subpoenas.

An Order follows, consistent with this Memorandum.


Date: August 29, 2017 /s/
Ellen Lipton Hollander
United States District Judge